Submitted on briefs, September 24, reversed October 19, rehearing
denied November 16, 1926.

# IVY M. BLISS *v.* JESSE O. MILLER AND MYRTLE MILLER.

(250 Pac. 218; 250 Pac. 763.)

**Divorce.**

1. Divorce decree *held* to make husband and wife tenants in
common as to property which they previously held by the entirety.

**Ejectment.**

2. Evidence in ejectment *held* insufficient to show that plaintiff
orally agreed to convey her entire interest in property owned by
her and her divorced husband as tenants by the entirety, when she
assigned sheriff's certificate of execution sale of her divorced hus-
band's interest.

**Attorney and Client.**

3. Attorney who collected money and rentals for land owner
*held* not to have apparent authority to contract to convey her prop-
erty.

**Abandonment.**

4. Plaintiff *held* not divested of half interest in real property
because she was unaware of it for many years and had practically
abandoned it, where title was of record.

**Execution—Assignment of Sheriff's Certificate of Sale, Which was
not Witnessed or Acknowledged, Held Binding as Between Par-
ties (§ 9876, Or. L).**

5. Assignment of sheriff's certificate of sale, which was not wit-
nessed or acknowledged as required by Section 9876, Or. L., *held*
binding as between parties, though it was not entitled to record
and did not give constructive notice of its purport and effect.

**Acknowledgment—Deeds.**

6. At common law validity of deed did not depend on attestation or acknowledgment.

**Specific Performance.**

7. A prayer for general relief will warrant decree of specific performance, if such relief is otherwise appropriate.

## ON PETITION FOR REHEARING.

**Principal and Agent.**

8. Where there was no agreement by agent to convey property, he having merely given opinion as to condition of title, there could be no ratification by principal of contract to convey.

**Equity—Equity, Having Assumed Jurisdiction of Suit in Ejectment, Could Grant Full and Complete Relief.**

9. Equity, having assumed jurisdiction of suit involving right to certain land, could grant full and complete relief, not being limited to relief demanded in complaint, notwithstanding that plaintiff commenced action in ejectment.

**Appeal and Error—Where Plaintiff 'was Declared Owner of Land to Which Defendants had had Exclusive Use, Case Need not be Remanded Because Defendants 'were Entitled to Contributions for Taxes and Other Liens.**

10. Where Supreme Court reversed lower court and adjudged plaintiff to be owner of land of which defendants had had exclusive use, benefit, and enjoyment, case need not be remanded because defendants were entitled to contributions for taxes and other liens, since such contributions might be set off against profits from land.

---

Acknowledgment, 1 C. J., p. 750, n. 51.
Deeds, 18 C. J., p. 248, n. 65.
Divorce, 19 C. J., p. 182, n. 65.
Ejectment, 19 C. J., p. 1247, n. 45 New.
Equity, 21 C. J., p. 134, n. 5.
Executions, 23 C. J., p. 659, n. 32.

From Deschutes: T. E. J. DUFFY, Judge.

In Banc.

In July, 1911, Charles H. Fry and Ivy M. Fry, his wife, now Ivy M. Bliss, plaintiff herein, owned as tenants by the entirety forty acres of land near the City of Redmond in Deschutes County, subject to a mortgage of $1,050, dated January 6, 1911, bearing

---

6. See 8 R. C. L. 940.
7. See 25 R. C. L. 333.

interest at 8 per cent per annum and due on or before June 24, 1912. This mortgage, in April, 1911, was assigned to W. A. Stevens. In March, 1915, plaintiff obtained a decree of divorce from Charles H. Fry wherein the latter was required to pay plaintiff a certain monthly sum for the support and maintenance of their two minor children. Fry became delinquent in his payments, execution was issued and his interest in the property levied upon and sold for $200 to plaintiff as judgment creditor, in the manner provided by law for the sale of real property upon execution. The sheriff's sale was duly confirmed and certificate thereof issued to plaintiff. It appears of record that plaintiff, on September 29, 1915, purported to assign the sheriff's certificate of sale to W. A. Stevens and, in accordance therewith, a sheriff's deed was obtained by the latter in October, 1917. Stevens by warranty deed conveyed the property in question to J. W. Livingston, who, with his wife, likewise conveyed it to the defendants. In September, 1924, defendants made application to the Federal Land Bank of Spokane for a loan and were advised, upon examination of abstract of title, that it would be necessary to obtain a quitclaim deed from plaintiff conveying her undivided one-half interest in the property. Such a deed was forwarded to her for execution but she refused to comply with defendants' demand and immediately commenced an action in ejectment. The complaint, aside from the usual allegations concerning title, demands damages for wrongful detention of the property.

Defendants, in their second amended answer, deny the title of plaintiff and allege affirmatively that they are the owners in fee simple of the property and entitled to the possession of same. As a further and separate defense they allege, so far as material

herein, after reciting the record history of the title, that one J. A. Willcox, who was her attorney in the divorce proceedings and caused her former husband's interest in the land to be sold upon execution, represented to Stevens in September, 1915, as agent for plaintiff, "that said Charles H. Fry was the sole owner of said premises prior to said Sheriff's Sale, and that the assignment of said Certificate to said Stevens would vest him with all interest of said Charles H. Fry and Ivy M. Fry, in and to said premises, and did agree to transfer all the right, title and interest of said Ivy M. Fry in and to said Certificate of Sale and in and to said premises for the sum of Ninety ($90.00) Dollars." And that Stevens, relying upon the representations as aforesaid, paid to Willcox, for the use and benefit of plaintiff, the sum of $90, whereupon she duly assigned to him all of her right, title and interest in and to said sheriff's certificate of sale. It is further alleged, "That the failure of said Assignment to convey and transfer unto said Stevens all interest of the plaintiff in and to said premises and embody the actual agreement between the parties was due to mutual ignorance and mistake of fact and law and erroneous advice and misrepresentation of said J. A. Willcox * * ." It is also averred that no payments upon the mortgage owned by Stevens had been made; that the same remains unsatisfied of record and that defendants "at all times since or about January, 1921, have been successors in interest to said Stevens in and to said premises, as tenants in common, and in possession thereof * * ." Defendants assert that they have no plain, adequate or complete remedy at law and pray for a decree that the assignment of the certificate of sale be reformed so as to express the real intention of the parties thereto and that they be decreed

to be the owners in fee simple of the property described in the complaint.

Plaintiff in her reply denied the new matter pleaded as a further and separate defense and alleged affirmatively, in substance, that more than ten years have elapsed since the date of maturity of the mortgage owned by Stevens and since no payments have been made thereon and "no renewal or extension of record" granted that it is satisfied and discharged and creates no lien against said property.

The cause was tried in equity and the court found, in keeping with the contention of defendants, that Willcox as agent for plaintiff made the representations as alleged and, at the time of the assignment of the certificate of sale, plaintiff intended to and did agree to transfer all of her right, title and interest in the property for the consideration mentioned and "the withholding of foreclosure of the mortgage." It was further found that, upon payment to plaintiff in September, 1915, "Stevens or his assigns went into possession of said premises under and by virtue of the terms of said contract," and have ever remained in possession, "claiming the same as their sole exclusive property and that during such time have made valuable and permanent improvements thereon, paid taxes and public charges levied and assessed against said premises and have occupied said lands as exclusive owners and received the issues and profits therefrom." The court also, in substance, found that the failure of plaintiff to assign and transfer all of her title and interest to the property was due to a mutual mistake which was not discovered by the parties until application for loan was made in September, 1924.

119 Or.—37

Based upon such findings it was decreed that the defendants are the owners in fee simple of the premises in controversy; that they are entitled to specific performance of the contract to convey and upon failure of the plaintiff to make conveyance the decree shall stand in lieu thereof.

From this decree plaintiff appeals.     Reversed.

For appellant there was a brief over the name of *Messrs. Collier, Collier & Bernard.*

For respondents there was a brief over the names of *Mr. Max A. Cunning* and *Mr. George H. Brewster.*

BELT, J.—It is conceded that prior to the divorce proceedings plaintiff and her former husband, Charles H. Fry, had an estate by the entirety in the land in controversy. The divorce decree, however, had the effect of changing the nature of their estate and made them tenants in common: *Hayes* v. *Horton,* 46 Or. 597 (81 Pac. 386); *Chase* v. *McKenzie,* 81 Or. 429 (159 Pac. 1025). Without doubt, plaintiff ac quired the undivided one-half interest of Charles H. Fry as a result of the sale of the property upon execution. We continue our inquiry therefore with the title in fee simple vested in plaintiff, subject to the mortgage owned by Stevens. In what way was she divested of such title? It is not contended that she executed any deed conveying her interest. The decree of the court does not undertake to reform the alleged assignment of the certificate of sale, nor of the sheriff's deed, but is predicated upon the theory of an oral agreement of the plaintiff to convey her entire interest in the property. Let us look to the record to ascertain whether there is evidence to sup-

port this conclusion.  In this connection it is urged by
defendants that Willcox was the duly authorized
agent of plaintiff to make such an agreement, but in
this contention we cannot agree.  There is no evi-
dence of Willcox being expressly authorized to con-
tract to convey plaintiff's real property and it can
hardly be contended that because he had acted in the
capacity of an attorney and had collected money and
rentals for her that he would have apparent authority
so to act.  Stevens testified that, in September, 1915,
he went to see Willcox to get a clear title to the land,
intending to foreclose his mortgage if she were not
willing to comply with his wishes in the matter, and
was informed by him that Mrs. Fry was in a position
to give him a "title clear from all Fry claims for
$90."  Stevens thereupon made a check payable to
Willcox for that amount.  He then, according to his
testimony, went to see the plaintiff and informed her
of the payment to Willcox and she said that it was
"perfectly satisfactory to her."  Stevens, in refer-
ring to the conversation with plaintiff, said: "I ex-
plained that I was Stevens * * I told her of the
arrangement of Willcox for her, to give her some
money out of the transaction and that it transferred
all Fry claims to me for this consideration that I had
paid Willcox and she ratified it."  There is strong
and convincing evidence that the plaintiff, at the time
of this conversation, signed the instrument purport-
ing to assign the certificate of sale, although she
denies having executed it.  The testimony of Stevens,
as above stated, seems to be the only basis for the
contention of the defendants that plaintiff made an
oral agreement to convey his property.  We agree
that the statute of frauds relative to the transfer of
title to real property would have no application if it

were clearly established that, pursuant to an oral agreement to convey the land, the defendants or their predecessors in interest went into possession and made valuable improvements thereon, but, after a careful consideration of the entire transcript of testimony, we are constrained to hold that the evidence does not show an agreement or meeting of the minds in that respect. The opinion of Willcox that the alleged assignment would give a "clear title to all of the Fry claims" and the conclusion of the witness that the plaintiff ratified such statement or representation does not constitute an agreement to convey.

4. Plaintiff was not divested of title by reason of the fact that for many years she was probably not aware of any interest in the land and practically abandoned it. Her title was a matter of record and was constructive notice to Stevens and his successors in interest.

5–7. We are not impressed with the contention of plaintiff that she did not execute the assignment of the sheriff's certificate of sale which resulted in the transfer of her former husband's undivided one-half interest. Her explanation of this transaction is not convincing. She said: "Well, I can't say that is my signature because I do not remember of ever sign-ing it. I have thought it over for a year now. I have wondered and pondered over it." Counsel for appellant insist, however, that, since the assignment was not witnessed nor acknowledged, it has no validity, and our attention is directed to Section 9876, Or. L., which provides that:

"All assignments of sheriff's certificate of sale of real property, on execution * * shall be executed and acknowledged and recorded in the same manner as deeds of real property, * * ."

Since this assignment was not witnessed and acknowledged as provided by statute, it was not entitled to be recorded and did not give constructive notice of its purport and effect, but, as between the parties thereto, was binding. At common law the validity of a deed did not depend upon its attestation or acknowledgment: 8 R. C. L. 940; Devlin on Deeds (3 ed.), § 255. The object of recording a deed is for the protection of creditors and innocent purchasers. In a few jurisdictions, under the statute, a deed not witnessed or acknowledged is not even binding upon the parties. In this jurisdiction, however, an imperfect or defective deed is, in equity, considered as a contract to convey and will be specifically enforced: *Moore* v. *Thomas,* 1 Or. 201; *Hill* v. *Cooper,* 6 Or. 181; *Wood* v. *Rayburn,* 18 Or. 3 (22 Pac. 521); *South Portland Land Co.* v. *Munger,* 36 Or. 477 (54 Pac. 815, 60 Pac. 5). It is true that defendants did not seek specific performance but, as stated in *South Portland Land Co.* v. *Munger, supra:*

"The prayer for general relief will, however, warrant the court in decreeing specific performance, if such relief is otherwise appropriate under the facts stated." Citing *Franklin* v. *Greene,* 2 Allen (Mass.), 519; *Hill* v. *Beach,* 12 N. J. Eq. 31.

We conclude that plaintiff is vested with an undivided one-half interest in this property, but has made a valid assignment of her former husband's interest therein.

It follows that the decree of the lower court is reversed and it is adjudged and decreed that plaintiff is the owner in fee of an undivided one-half interest in the property described in the complaint and is entitled to possession thereof as tenant in common with

defendants. Neither party will recover costs or disbursements in this or in the lower court.

REVERSED AND DECREE ENTERED.

RAND, J., absent.

---

Rehearing denied November 16, 1926.

ON PETITION FOR REHEARING.

(250 Pac. 763.)

*Mr. Max A. Cunning* and *Mr. George H. Brewster* for the motion.

*Messrs. Collier, Collier & Bernard, contra.*

BELT, J.—Counsel for respondents urges that the court failed to take into consideration the ratification by plaintiff of the unauthorized act of her agent, Wilcox. It was said in the original opinion: "The opinion of Wilcox that the alleged assignment would give 'a clear title to all of the Fry claims' and the conclusion of the witness that the plaintiff ratified such statement or representation does not constitute an agreement to convey." Since there was no agreement by Wilcox to convey this property, but merely his opinion as to the condition of the title, it follows that there could be no ratification by plaintiff of a contract to convey.

It is asserted that, since the plaintiff commenced an action in ejectment and alleged sole and exclusive ownership of the property, the court was not warranted in granting any relief other than that demanded in the complaint. This cause was tried in equity. Defendants selected the forum and it is idle to say that equity, having assumed jurisdiction, did not have the power to grant full and complete relief.

Finally, it is contended that the cause ought to be remanded for the reason "that the defendants are en-

titled to contributions from the plaintiff for the payment of taxes and other liens on the premises." This matter was considered, although not referred to in the opinion. It was not thought advisable thus to remand the cause since. defendants have had the exclusive use, benefit and enjoyment of the property. In the light of the record, we deem it equitable to offset against the amount due defendants for payment of taxes and water assessments that sum due plaintiff arising out of the profits of the land. It may well be argued that there is not sufficient data to strike a balance between the parties, but we think the conclusion reached is substantially correct and that it is better thus to end the litigation and thereby save what little remains of this ranch.

Petition for rehearing is denied.

RAND, J., absent.        REHEARING DENIED.